UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

BRIAN BURKE

                                        Plaintiff,

    - against -                                  2007 Civ. 9933 (PKC) (DFE)

Solomon Acosta & FASCore/Great West &
MTA/NYC Transit Authority Et. Al,

                                 Defendants.
------------------------------------------------------------------x


## MTA DEFENDANT's

## MEMORANDUM IN SUPPORT OF ITS

## MOTION TO DISMISS


JAMES  B. HENLY
General Counsel for the
Metropolitan Transportation Authority
347 Madison Avenue, 9th Floor
New York, NY 10017

BY: Ching Wah Chin
Associate Counsel (CC 2850)
(212) 878-1037

of counsel,
Ching Wah Chin

**Contents**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I      PLAINTIFF'S DEMAND FOR
A LONG-TERM LOAN
WAS  PROPERLY DENIED . . . . . . . . . . . . . . . . . . . . . . . 4

POINT II     PLAINTIFF FAILED TO PROPERLY PLEAD
ANY OF HIS CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Preliminary Statement**

Plaintiff 's Amended Complaint complains that plaintiff was improperly denied a long-term mortgage loan from his pension account.  In fact, plaintiff simply is not eligible for a long-term loan from his pension account.  Furthermore, plaintiff fails to properly plead any of his purported claims which arise from the supposed improper denial of a long-term loan from his pension account.  Accordingly, plaintiff's Amended Complaint must be dismissed.

**Statement of Facts**

1.        Plaintiff complains over the denial in or around August 2006 of his loan request for a long-term "mortgage" loan from his Pension Account under Internal Revenue Code § 457 ( his "457 Account") for the purchase of a property located in Las Vegas, Nevada.

2.        Plaintiff is an employee of the New York City Transit Authority (the "NYCTA") and as such can be an eligible participant in the Deferred Compensation Plan for Employees of the Metropolitan Transportation Authority, its Subsidiaries and Affiliates (the "Plan").

3.        The NYCTA is a separate New York State public authority affiliated with the Metropolitan Transportation Authority (the "MTA").  They are legally separate entities but the MTA provides some pension administrative services to the NYCTA.

4.        Plaintiff is a participant in the Plan and has a 457 Account within the Plan.  *See*, Amended Complaint, Subject Matter Jurisdiction, Statement of Facts (2).

5.        Plaintiff's principal residence is in New York, New York.  *See*, Amended Complaint, Venue.

6.        Section 6.5 of  the Plan (a full text attached as Exhibit A in Chin Declaration)

allows for loans to a participant from the participant's account under certain conditions, including:

> Plan loans, other than those for the purpose of acquiring the dwelling unit which is, or within a reasonable time shall be, the principal residence of the Participant, shall be repaid over a non-renewable repayment period of five years. A Plan loan made for acquiring a principal residence shall be repaid over a non-renewable repayment period of up to 15 years, or such other term as the Committee shall determine.

Pursuant to the Plan, the Committee has determined a 20 year repayment period for long-term principal residence loans, as compared for the other short-term "general purpose" standard loans whose repayment period remain at 5 years.

7.      In effect, the Plan provides that a long-term "mortgage" loan from a 457 Account could only be for the purpose of acquiring either a principal residence or a dwelling unit that in a reasonable time would become a principal residence.

8.      It has been the Plan's practice that the "reasonable time" of Section 6.5 referred to above for acquiring the principal residence dwelling unit would generally be within a one (1) year time period.

9.      However, plaintiff at the time of his request for a long-term loan to purchase a residence in Las Vegas, Nevada, had only five years of service with the NYCTA and was only forty-four (44) years old. He had not filed any applications for retirement and in fact was not yet eligible for retirement.

10.     Plaintiff could not reasonably be expected to retire until age fifty-five (55), over ten years from the time of his request for a long-term principal residence loan.

11.     Furthermore, plaintiff as an employee of the New York City Transit Authority, and with a present principal residence in New York, New York, could not reasonably be expected to have a principal residence in Las Vegas, Nevada and still continue to work

2

for the NYCTA and participate in the Plan.  Thus, a residence in Las Vegas did not

qualify as a dwelling which within a reasonable time would be plaintiff's principal

residence.

12.        If plaintiff was soon to retire so that he could reasonably be expected to have a

principal residence away from working at the NYCTA, then the location of the premises

in Las Vegas for which the loan was requested would not be an issue.

13.        As plaintiff could not show how a property in Nevada could reasonably be

considered a principal residence for him while he was  working in New York City,

plaintiff did not meet the requirements for a long-term "mortgage" loan from his 457

Account to use towards the purchase of property in Las Vegas, Nevada.

14.        Plaintiff was also a participant in the MTA's 401(k) Plan, a separate plan under

Internal Revenue Code § 401(k).   Plaintiff did apply for and receive a short-term

"general purpose" loan from his 401(k) Account.

15.        Plaintiff filed a Notice of Claim (a true copy attached as Exhibit B in Chin

Declaration) with the MTA.  Amended Complaint, Statement of Facts ¶ 3.

16.        Plaintiff had testified as to his claims in more detail pursuant to N.Y. Public

Authorities Law § 1276.  Transcript, attached as Exhibit C in Chin Declaration;

Amended Complaint, Statement of Facts, last paragraph before Remedy Sought.

17.        Plaintiff at all relevant times could have applied for and received a short-term

"general purpose" standard loan from his 457 Account, subject to the rules of the Plan

and the Internal Revenue Code.

18.        Accordingly, there is absolutely no basis for plaintiff's Amended Complaint.

**Argument**

Plaintiff's Amended Complaint rests solely on a supposed improper denial of a long-term mortgage loan from plaintiff's pension account.  Plaintiff's accounts are accurate in the amount of monies he expects in them.  T.95-96   However, plaintiff's pension account simply does not allow a long term mortgage loan under plaintiff's circumstances.  Furthermore, plaintiff fails to properly plead any of his alleged derivative claims arising from that supposed improper denial of a long-term loan.  Accordingly, plaintiff's Amended Complaint should be dismissed.

### POINT I

### PLAINTIFF'S DEMAND FOR A LONG-TERM LOAN WAS  PROPERLY DENIED.

Plaintiff has no basis to complain that he was improperly denied a long-term mortgage loan from his pension account.  Loans from plaintiff's pension account are controlled by the terms of the Pension Plan and by the rules of Internal Revenue Code.  Long-term loans from plaintiff's pension account could only be for the purchase of a principal residence within a reasonable time.  As plaintiff cannot show that he is purchasing a principal residence within a reasonable time, plaintiff simply is not allowed to take out a long-term loan from his pension account as plaintiff demands.  Accordingly, plaintiff's complaint of an improper denial of his demand for a loan must be dismissed.

Loans from plaintiff's pension account are controlled by the terms of the Pension Plan and by the rules of Internal Revenue Code.  *Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000), *cert. denied*, 531 U.S. 1061 (2001);  *Geib v. Commissioner*, T.C. Memo 2000-391, 2000 Tax Ct. Memo LEXIS 466, at *3-6, 80 T.C.M. (CCH) 931, T.C.M. (RIA) P54170 (T.C. 2000); *Levie v. Commissioner*, T.C. Memo 1992-230, 1992 Tax Ct. Memo LEXIS 251, at 10, 63 T.C.M.

(CCH) 2798, T.C.M. (RIA) P92230 (T.C. 1992) (In order for a plan to be qualified for retirement benefits, both its terms and its operation must meet the statutory requirements.).  And see, *In re Barnes*, 264 B.R. 415, 419 (D. Mich. 2001) (plan's loan conditions mirror statutory language of 26 U.S.C. § 72(p)).   The Plan Document is integral to plaintiff's Amended Complaint and may be considered by the Court.  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005);  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004);  *Tofighbakhsh v. Potomac Elec. Power Co.*, No. AW-00-1026 2000 U.S. Dist. LEXIS 19528, at *2 n.1, 25 Employee Benefits Cas. (BNA) 1476 (D. Md. Aug. 11, 2000) (pension plan documents).

If a loan is not in accordance with the rules of the Plan and the Internal Revenue Code, then the loan instead becomes a distribution and there are significant tax consequences for receiving a distribution from a pension account.  *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 8, 124 S. Ct. 1330, 158 L. Ed. 2d 40 (2004);  *Exxon Research & Eng'g Co. v. NLRB*, 89 F.3d 228, 230 (5th Cir. 1996).   And see, *Fohrmeister v. Commissioner*, T.C. Memo 1997-159, 1997 Tax Ct. Memo LEXIS 181, at *13-14, 73 T.C.M. (CCH) 2483, T.C.M. (RIA) P97159 (T.C. 1997) (a ten percent additional tax is levied on a distribution from a qualified pension plan, unless the distribution comes within an exception);   26 U.S.C. § 72(p)(2)(B), 72(q) (penalty).  In fact, allowing improper loans may at times be criminal.  *United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000) (embezzlement).

Defendants' interpretation of plaintiff's failure to meet the "reasonable time" requirement was not arbitrary.  The Pension Plan  provides that: "All Plan loans, other than those for the purpose of acquiring the dwelling unit which is, or within a reasonable time shall be, the principal residence of the Participant, shall be repaid over a non-renewable repayment period of five years. A Plan loan made for acquiring a principal residence shall be repaid over a

nonrenewable repayment period of up to 15 years, or such other term as the Committee shall determine." Plan Doc. 6.5;  *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 106-107 (2d Cir. 2005) (The court may not upset a reasonable interpretation by the administrator.);  *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)  (the administrator's conclusion is not disturbed unless it is "arbitrary and capricious.").   Here, plaintiff's anticipated time of purchase of the property did not meet the administrator's interpretation of reasonable time.[1]   In fact, plaintiff did not even expect the property to be built until 2008.  T.15   At the time of plaintiff's demand for a long-term loan, plaintiff's primary residence was and remains in New York City.  T.4,12-15   From the time of plaintiff's demand in 2006 for a long-term loan, plaintiff was only 44 years old and had worked for the New York City Transit Authority for only five years.  T.7-8  At the time of plaintiff's demand for a long-term loan, plaintiff had not made any preparations for moving to Las Vegas.  T.18-21,32-35

Even with plaintiff's mistaken definition of a two year reasonable time period, there is no indication that plaintiff would have been acquiring the Las Vegas, Nevada property as a primary residence.  Plaintiff had made no preparations for moving to Las Vegas, and was not even contemplating retirement.  T. 101 ("Unless I win the Lotto").

---

[1]     At best, plaintiff believes that a reasonable time period is two years.  T.122-23 Plaintiff apparently derived the two year period from plaintiff's mistaken understanding that a primary residence is where the taxpayer resides two years out of five.  T.118.  However, even that mistaken two years could not be the time period referred to in the Plan calling for the prospective property to become a primary residence within a "reasonable time".

If plaintiff's mistaken definition is applied, the property would first have to be occupied, and then at best it could not be a primary residence for at least two years after that.  As the property was not expected to be finished until 2008, Plaintiff could not, even using plaintiff's own definition have called Las Vegas his primary residence until some four years from the time he demanded a long-term loan.

## POINT II

**PLAINTIFF FAILED TO
PROPERLY PLEAD ANY OF HIS CLAIMS.**

Plaintiff cannot plead jurisdiction in this action when there are no applicable federal claims and plaintiff lacks diversity over any state claims. Plaintiff has no private cause of action for an alleged breach of the Internal Revenue Code. Plaintiff cannot plead jurisdiction over ERISA when the Plan at issue is simply not subject to ERISA. Plaintiff cannot plead any diversity jurisdiction. Accordingly, plaintiff complaint must be dismissed.

Plaintiff has no private cause of action for an alleged breach of the Internal Revenue Code. *Thornton v. Shaker Ridge Country Club, Inc.*, No. 07-CV-761, 2007 U.S. Dist. LEXIS 94082, at *16-17 (N.D.N.Y. Dec. 26, 2007) (private citizens cannot enforce the provisions of the Tax Code); *Sirna v. Prudential Sec.*, 1997 U.S. Dist. LEXIS 1226 at *10, 20 Employee Benefits Cas. (BNA) 2620 (S.D.N.Y. Feb. 7, 1997) (creating a federal private cause of action against fiduciaries would not further Congress' purpose of promoting individual retirement savings); *Deleu v. Scaife*, 775 F. Supp. 712, 717 (S.D.N.Y. 1991) (no private remedy for violations of these sections of the federal tax law); *Wiesner v. Romo Paper Products Corp. Employees' Retirement Plan*, 514 F. Supp. 289, 291 n.2 (E.D.N.Y. 1981) (no private federal jurisdiction available for violations of Internal Revenue Code provisions governing pension plans).

Plaintiff has no cause of action under ERISA when the government plan at issue is not subject to ERISA. Plaintiff's 457 Account is by definition under a government plan when plaintiff's employer, the NYCTA, is a public authority and established the Plan. *Roy v. Teachers Ins. & Annuity Assoc.*, 878 F.2d 47, 50 (2d Cir. 1989); *Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910, 917 (2d Cir. 1987), *cert. denied*, 485 U.S. 936 (1988). See also, 26 U.S.C. §

457 (Deferred compensation plans of State and local governments and tax-exempt organizations.).  In fact, while plaintiff's employer NYCTA is an affiliate of the MTA and the MTA provides certain pension administrative services, the NYCTA actually is a public authority in its own right.  N.Y. Pub. Auth. Law § 1200, et seq.  Accordingly, the NYCTA's pension plans for its employees, including the 457 Plan at issue, are governmental plans, and are exempt from ERISA.  *Rome v. MTA/New York City Transit*, No. 97 Civ. 2945, 1997 U.S. Dist. LEXIS 23436, at*16-17, 1997 WL 1048909 (E.D.N.Y. Nov. 18, 1997).

In the absence of any federal claims, plaintiff's state claims before this Court have a lack of diversity jurisdiction.  Plaintiff who resides in New York State has named as a defendant the MTA which is also of New York State.  "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007). Accordingly, there is no diversity jurisdiction in this action.

The Amended Complaint's list of various Constitutional violations without any details is fatally flawed in that defendants have no way of responding to such vague and ambiguous allegations.  *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 103 (E.D.N.Y. 2004) (a more definite statement required).   Furthermore, plaintiff fails to allege any state action that would support a Constitutional claim.  While the MTA may be a subdivision of the State and the Plan is a "government plan" in this matter, plaintiff makes no allegations of any State action on which to base a Constitutional violation.  *Clissuras v. Teachers' Ret. Sys.*, No.'s 02 Civ. 8130, 02 Civ. 8138,  2003 U.S. Dist. LEXIS 4905 at *8-12 (S.D.N.Y.  March 27, 2003) (pension fund is not a state actor even if monies are received through the state).

Plaintiff's remaining claims are not properly pleaded.  For instance, plaintiff utterly fails

to properly plead any RICO or fraud claims. *Tropeano v. City of New York*, 06 CV 2218, 2006 U.S. Dist. LEXIS 86013, at *10-13, 2006 WL 3337514 (E.D.N.Y. Oct. 31, 2006). Here, plaintiff fails to properly plead any "pattern" of racketeering. *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85,  88-89 (2d Cir. 1999), *cert. denied*, 529 U.S. 1097 (2000). Mr. Acosta is an employee of the MTA, and FASCore is contracted with the MTA to perform administrative tasks for the Pension Plan. Plaintiff fails to properly plead any fraud. *First Capital Asset Mgmt. v. Satinwood, Inc*., 385 F.3d 159, 178 (2d Cir. 2004).  Plaintiff must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion. *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121,  (2d Cir. 2007) (explaining *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ("plausibility standard")). Here, plaintiff not only fails to plead fraud or conspiracy with any specificity, there can be no plausibility when, as discussed in Point I above, the complained-of conduct was fully justified by the terms of the Pension Plan Documents. In fact, it appears that plaintiff has no basis for his RICO claims. T.52-54

Accordingly, even if plaintiff had succeeded in establishing jurisdiction, plaintiff should still be required to plead with a more definite statement of plaintiff's claims.

**Conclusion**

Plaintiff's Amended Complaint fails to properly plead any cause of action or even to establish any jurisdiction.  Accordingly, plaintiff's Amended Complaint should be dismissed.

WHEREFORE, MTA Defendants request that plaintiff's Amended Complaint be dismissed;  together with any other relief the Court deems just and proper.

Dated:          New York, New York
                January 14, 2008

                                              JAMES  B. HENLY
                                              General Counsel for the
                                              Metropolitan Transportation Authority
                                              347 Madison Avenue, 9th Floor
                                              New York, NY 10017

                                              /s/_____
                                              By:  Ching Wah Chin (CC 2850)
                                              Associate Counsel
                                              (212) 878-1037

               of counsel,
               Ching Wah Chin

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2008, in addition to Electronically Filing, I caused a

true and correct copy of the foregoing MTA Defendant's Motion to Dismiss, Chin Declaration,

and MTA Defendant's Memorandum in Support of MTA Defendant's Motion to Dismiss, to be

served upon:

Mr. Brian Burke                  *via*     briantburke@gmail.com
Pro Se Plaintiff
145 East 23rd Street
New York  NY  10010

Michael Zaretsky, Esq.          via     mzaretsky@cgkesqs.com
Carlet Garrison Klein & Zaretsky
Attorneys for Defendant FASCore
1135 Clifton Avenue
Clifton  NJ  07015-2666


Dated:       New York, New York
             January 14, 2008


                              /s/_____
                              By:  Ching Wah Chin (CC 2850)
                              Associate Counsel
                              (212) 878-1037