JAMES  B. HENLY
General Counsel for the
Metropolitan Transportation Authority
347 Madison Avenue, 9th Floor
New York, NY 10017
BY:    Ching Wah Chin
           Associate Counsel (CC 2850)
           (212) 878-1037

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

BRIAN BURKE
                                         Plaintiff,

        - against -                                                **CHING WAH CHIN**
                                                                   **DECLARATION**

Solomon Acosta & FASCore/Great West &
MTA/NYC Transit Authority Et. Al,
                                                                   2007 Civ. 9933 (PKC) (DFE)

                                         Defendants.
-------------------------------------------------------------------x


        I, CHING WAH CHIN, am an attorney duly admitted to practice law in the Southern

District of New York and I am an Associate Counsel of the defendant Metropolitan

Transportation Authority ("MTA"), and as such I am fully familiar with this matter.  This

declaration is submitted in support of Defendants MTA and Salomon Acosta (MTA Defendants)

in Opposition against Pro Se Plaintiff's Motion for a Default Judgment, and I declare that the

following is true and correct**:**

1.            Plaintiff complains over the denial in or around August 2006 of his loan request for

        a long-term "mortgage" loan from his Pension Account under Internal Revenue Code § 457

        ( his "457 Account") for the purchase of a property located in Las Vegas, Nevada.

2.            Plaintiff is an employee of the New York City Transit Authority (the "NYCTA") and

        as such can be an eligible participant in the Deferred Compensation Plan for Employees of

        the Metropolitan Transportation Authority, its Subsidiaries and Affiliates (the "Plan").

3.          The NYCTA is a separate New York State public authority affiliated with the Metropolitan Transportation Authority (the "MTA").  They are legally separate entities but the MTA provides some pension administrative services to the NYCTA.

4.          Plaintiff is a participant in the Plan and has a 457 Account within the Plan.  *See*, Amended Complaint, Subject Matter Jurisdiction, Statement of Facts (2).

5.          Plaintiff's principal residence is in New York, New York.  *See*, Amended Complaint, Venue.

6.          Section 6.5 of  the Plan (a true copy of its full text attached herein as Exhibit A) allows for loans to a participant from the participant's account under certain conditions, including:

> Plan loans, other than those for the purpose of acquiring the dwelling unit which is, or within a reasonable time shall be, the principal residence of the Participant, shall be repaid over a non-renewable repayment period of five years.  A Plan loan made for acquiring a principal residence shall be repaid over a non-renewable repayment period of up to 15 years, or such other term as the Committee shall determine.

Pursuant to the Plan, the Committee has determined a 20 year repayment period for long-term principal residence loans, as compared for the other short-term "general purpose" standard loans whose repayment period remain at 5 years.

7.          In effect, the Plan provides that a long-term "mortgage" loan from a 457 Account could only be for the purpose of acquiring either a principal residence or a dwelling unit that in a reasonable time would become a principal residence.

8.          It has been the Plan's practice that the "reasonable time" of Section 6.5 referred to above for acquiring the principal residence dwelling unit would generally be within a one (1) year time period.

9.          However, plaintiff at the time of his request for a long-term loan to purchase a

residence in Las Vegas, Nevada, had only five years of service with the NYCTA and was only forty-four (44) years old. He had not filed any applications for retirement and in fact was not yet eligible for retirement.

10.         Plaintiff could not reasonably be expected to retire until age fifty-five (55), over ten years from the time of his request for a long-term principal residence loan.

11.         Furthermore, plaintiff as an employee of the New York City Transit Authority, and with a present principal residence in New York, New York, could not reasonably be expected to have a principal residence in Las Vegas, Nevada and still continue to work for the NYCTA and participate in the Plan. Thus, a residence in Las Vegas did not qualify as a dwelling which within a reasonable time would be plaintiff's principal residence.

12.         If plaintiff was soon to retire so that he could reasonably be expected to have a principal residence away from working at the NYCTA, then the location of the premises in Las Vegas for which the loan was requested would not be an issue.

13.         As plaintiff could not show how a property in Nevada could reasonably be considered a principal residence for him while he was working in New York City, plaintiff did not meet the requirements for a long-term "mortgage" loan from his 457 Account to use towards the purchase of property in Las Vegas, Nevada.

14.         Plaintiff was also a participant in the MTA's 401(k) Plan, a separate plan under Internal Revenue Code § 401(k). Plaintiff did apply for and receive a short-term "general purpose" loan from his 401(k) Account.

15.         Plaintiff filed a Notice of Claim (a true copy attached herein as Exhibit B) with the MTA. Amended Complaint, Statement of Facts ¶ 3.

16.         Plaintiff had testified as to his claims in more detail pursuant to N.Y. Public

Authorities Law § 1276. Transcript (("T.") a true copy attached herein as Exhibit C); Amended Complaint, Statement of Facts, last paragraph before Remedy Sought.

17.        Plaintiff at all relevant times could have applied for and received a short-term "general purpose" loan from his 457 Account, subject to the rules of the Plan and the Internal Revenue Code.

18.        Accordingly, there is absolutely no basis for plaintiff's Amended Complaint.


WHEREFORE, MTA Defendants request that plaintiff's demand for a default be denied; together with any other relief the Court deems just and proper.


Dated:        New York, New York
              January 14, 2008


                                        /s/_____
                                        By: Ching Wah Chin (CC 2850)
                                        Associate Counsel
                                        (212) 878-1037

4

**Deferred Compensation Plan
for Employees of
The Metropolitan Transportation Authority, its Subsidiaries and Affiliates
("MTA Organization")
Plan Document**

## PURPOSE

The purpose of the Plan is to encourage Employees to make and continue careers with the MTA Organization by providing eligible Employees with a convenient way to save on a regular and long-term basis and thereby provide for their retirement as set forth herein. A Local Employer that is not a participating employer in the Deferred Compensation Plan for Employees of the State of New York and Other Participating Jurisdictions or the sponsor of any other eligible deferred compensation plan may adopt this Plan by complying with the procedures set forth in the Regulations.

The benefits provided to any Participant under the Plan will be based upon the aggregate Plan Benefit and will depend upon the investment results achieved by the Financial Organizations appointed to invest the assets of the Plan allocated to each of the Plan's Investment Funds hereunder and the Participant's individual investment choices among the Plan's Investment Funds. Each Participant shall be 100 percent vested at all times in his or her Plan Benefit in accordance with the terms of the Plan.

In accordance with amendments made to Section 457 of the Code and other federal laws by the Small Business Job Protection Act of 1996 and the Economic Growth and Tax Relief Reconciliation Act of 2001, all amounts of Compensation deferred under the Plan, all property and rights purchased with such amounts and all income attributable to such amounts, property and rights are held in trust as of the Effective Date for the exclusive benefit of Participants and their Beneficiaries and Alternate Payees pursuant to the Trust Agreement. The

terms and provisions of the Plan in effect prior to the Effective Date, if any, shall govern with respect to periods prior to the Effective Date.

The Plan and the Trust Agreement are intended to satisfy the requirements for an "eligible deferred compensation plan" under Section 457 of the Code.

# SECTION 1.  DEFINITIONS

When used herein the following terms shall have the following meanings:

"*Account*" means the account established and maintained in respect of a Participant pursuant to Section 5.1.  The Account shall include all Amounts Deferred and Section 457 Transfers.

"*Administrative Service Agency*" means an Administrative Service Agency as defined in the Regulations selected by the Committee to provide services in respect of the Plan. If the Trust Agreement so provides, the record keeping services normally performed by an Administrative Service Agency may be performed by the Trustee, provided that the Trustee otherwise qualifies as an Administrative Service Agency.

"*Alternate Payee*" means any spouse, former spouse, child or other dependent of a Participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefit payable under the Plan with respect to such Participant.

"*Alternate Payee Account*" means the account established for an Alternate Payee pursuant to a Qualified Domestic Relations Order, *provided, however*, that the Alternate Payee Account shall separately account for all amounts received from (i) the Participant's Rollover Account and (ii) from all amounts rolled into the Plan by the Alternate Payee pursuant to Section 7.5(b)(ii).

"*Amount Deferred*" means Compensation deferred by a Participant pursuant to Section 3.1.

"*Beneficiary*" means the beneficiary or beneficiaries designated by a Participant pursuant to Section 8 to receive the amount, if any, payable under the Plan upon such Participant's death.

"*Business Day*" means any day that is not a Saturday, a Sunday or other day on which the New York Stock Exchange is not open for the trading of securities.

"*Code*" means the Internal Revenue Code of 1986, as now in effect or as hereafter amended.  All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

"*Committee*" means the Deferred Compensation Committee of the MTA.

"*Compensation*" means all compensation for services to the Employer, including salary, wages, fees, commissions and overtime pay that is includible in the Employee's gross income for each Plan Year under the Code and any accumulated sick pay, accumulated vacation pay and back pay paid to a Participant by his or her Employer.

"*Distributee*" means (a) an Employee or former Employee, (b) the Surviving Spouse of an Employee or former Employee and (c) the spouse or former spouse of an Employee or former Employee, but only to the extent such spouse or former spouse is an Alternate Payee under a Qualified Domestic Relations Order and only with regard to the interest of such spouse or former spouse.

"Earliest Retirement Date" means the earlier of (a) the date on which the Participant Severs from Employment and (b) the date the Participant attains age 50.

"Effective Date" means January 1, 2003, unless otherwise stated.

"*Eligible Retirement Plan*" means (i) an individual retirement account described in Section 408(a) of the Code, (ii) an individual retirement annuity described in Section 408(b) of

the Code, (iii) a qualified trust under Section 401(a) or 401(k) of the Code, (iv) an annuity

contract described in Section 403(b) of the Code and (v) an eligible deferred compensation plan

described in Section 457 of the Code that is maintained by a state, political subdivision of a state,

any agency or instrumentality of a state or political subdivision of a state.

    "*Eligible Rollover Distribution*" means all or any portion of the pretax

contributions and earnings thereon to the credit of a Distributee, except that an Eligible Rollover

Distribution shall not include (a) any distribution that is (i) one of a series of substantially equal

periodic payments (not less frequently than annually) made for the life (or life expectancy) of the

Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's

Beneficiary or (ii) for a specified period of ten years or more, (b) any distribution to the extent

such distribution is required under Section 401(a)(9) of the Code, (c) any distribution due to a

hardship of the Distributee, including, without limitation, an unforeseen emergency pursuant to

Section 6.1, and (d) the portion of any distribution that is not includible in gross income;

*provided*, *however*, that clause (d) shall not apply to the extent such portion is transferred (i) in a

direct trustee-to-trustee transfer to a qualified trust under Section 401(a) of the Code that is part

of a defined contribution plan and that separately accounts for amounts so transferred or (ii) to an

Eligible Retirement Plan under Section 408 of the Code.

    "*Employee*" means any individual who receives compensation for services from

the Employer, including any elected or appointed officer or employee of the Employer, and any

employee who is included in a unit of employees covered by a negotiated collective bargaining

agreement which specifically provides for participation in the Plan.  An Employee shall not

include an independent contractor, a consultant or any other individual classified by the

Employer as not eligible to participate in the Plan.

"*Employer*" means the Metropolitan Transportation Authority ("MTA"), Metro-North Commuter Railroad Company, The Long Island Rail Road Company, New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, Triborough Bridge and Tunnel Authority, Metropolitan Suburban Bus Authority, Staten Island Rapid Transit Operating Authority and any other public benefit corporations which are governed by the MTA or any such corporations.

"*Enrollment Date*" means, with respect to an Employee, each payroll date on which such Employee receives Compensation, or such other date or dates as the Committee may establish either in lieu of, or in addition to, such dates.

"*Financial Organization*" means a Financial Organization as defined in the Regulations selected by the Committee to provide services in respect of the Plan. If the Trust Agreement so provides, the financial services provided by a Financial Organization may be performed by the Trustee, provided that the Trustee otherwise qualifies as a Financial Organization.

"*Includible Compensation*" means "includible compensation" as defined in Section 457(e)(5) of the Code.

"*Investment Fund*" means each of the Investment Funds provided for in Section 4.1.

"*Local Employer*" means a Local Employer as defined in Section 5 of the State Finance Law.

"*Normal Retirement Age*" means, for purposes of Section 3.2(b), any age designated by a Participant (i) beginning no earlier than the earliest age at which a Participant has the right to retire under the Employer's basic pension plan, if any, and to receive immediate

6

retirement benefits without actuarial or similar reduction because of retirement before some later age specified in such basic pension plan or, in the case of a Participant who does not participate in such basic pension plan, age 65, and (ii) ending no later than age 70½. Notwithstanding the previous sentence, a Participant who is a qualified police officer or firefighter (as defined under Section 415(b)(2)(H)(ii)(I) of the Code) may designate a Normal Retirement Age that is earlier than the earliest Normal Retirement Age described above, but in no event may such Normal Retirement Age be earlier than age 40. Notwithstanding anything in the Plan to the contrary, the Participant's designation of a Normal Retirement Age under Section 3.2(b) shall not control the date that payment of such Participant's benefits shall commence pursuant to Section 7. Effective for Plan Years prior to January 1, 2003, in the case of a Participant who continued to work beyond age 70½ and who, upon the attainment of age 70½, had not made the catch-up election provided for under Section 3.2(b), the Normal Retirement Age shall be the age designated by the Participant, which shall not be later than the age at which the Participant Severs from Employment with the Employer.

"*Participant*" means an Employee or former Employee who has given an investment direction under Section 4 and who continues to have an Account or Rollover Account under the Plan.

"*Participation Agreement*" means a written agreement between an Employee and the Employer, pursuant to which the Employee elects to reduce his or her Compensation and to have the Amount Deferred contributed to the Plan on his or her behalf in accordance with the terms of the Plan; *provided*, *however*, that in the case of a deferral of accumulated sick or vacation pay or back pay, such Participation Agreement shall be entered into in accordance with the timing requirements of the Treasury Regulations promulgated under Section 457 of the Code.

7

"*Plan*" means the Deferred Compensation Plan for Employees of the Metropolitan Transportation Authority, its Subsidiaries and Affiliates, as the same may be amended from time to time.

"*Plan Benefit*" means, with respect to a Participant, the interest of such Participant in the Trust Fund, excluding any portion of such interest payable to an Alternate Payee pursuant to a Qualified Domestic Relations Order.

"*Plan Year*" means the calendar year.

"*Qualified Domestic Relations Order*" means any judgment, decree or order, including, but not limited to, approval of a property settlement agreement, which has been determined by the Administrative Service Agency to meet the requirements of a qualified domestic relations order within the meaning of Section 414(p) of the Code.

"*Regulations*" means the rules and regulations promulgated by the Deferred Compensation Board of the State of New York pursuant to Section 5 of the State Finance Law, as the same may be amended from time to time.

"*Review Committee*" means the committee designated by the Committee to review claims to rights or benefits under the Plan in accordance with Section 9.5 and requests for hardship withdrawals under Section 6.

"*Rollover Account*" means the account established and maintained in respect of a Participant or a Beneficiary who is a Participant's Surviving Spouse pursuant to Section 7.5(b)(ii).

"*Rollover Contribution*" means a cash amount contributed by a Participant, a Beneficiary who is a Participant's Surviving Spouse or Alternate Payee to a Rollover Account or, if applicable, an Alternate Payee Account, which the Administrative Service Agency has

determined qualifies as an Eligible Rollover Distribution and which the Administrative Service Agency, in accordance with guidelines promulgated by the Committee, has determined may be contributed; *provided, however*, that the distributing Eligible Retirement Plan shall not be an eligible deferred compensation plan under Section 457(b) of the Code and *provided further* that the distributing Eligible Retirement Plan shall have separately accounted for all amounts included in the Rollover Contribution.

"*Section 457 Transfer*" means a transfer made into an Account pursuant to Section 7.5(b)(i).

"*Severance from Employment*" or "*Severs from Employment*" means a severance from the employment of the Employer within the meaning of Section 457 of the Code and the Treasury Regulations thereunder and USERRA.

"*State*" means the State of New York.

"*Surviving Spouse*" means the survivor of a deceased Participant to whom such Participant was legally married on the date of the Participant's death.

"*Treasury Regulations*" means the regulations promulgated by the Treasury Department under the Code, as now in effect or as hereafter amended. All citations to sections of the Treasury Regulations are to such sections as they may from time to time be amended or renumbered.

"*Trust Agreement*" means an agreement entered into in respect of the Plan between the Committee and one or more Trustee(s) pursuant to which all cash and other rights and properties and all income attributable to such cash and rights and properties are held in trust for the exclusive benefit of Participants and their Beneficiaries and Alternate Payees, as such agreement may be amended from time to time.

"*Trust Fund*" means the assets of the Plan, including cash and other rights and properties arising from Amounts Deferred, Section 457 Transfers and Rollover Contributions which are held and administered by the Trustee pursuant to the Trust Agreement.

"*Trustee*" means the trustee or trustees acting as such under the Trust Agreement, and any successors thereto.

"*Unit*" means a unit measuring the value of a Participant's proportionate interest in an Investment Fund.

"*USERRA*" means the provisions of the Uniformed Services Employment and Reemployment Rights Act of 1994 contained in chapter 43 of title 38 of the United States Code.

"*Valuation Date*" means each Business Day, except that for purposes of an Investment Fund invested primarily in guaranteed investment contracts and synthetic guaranteed investment contracts, Valuation Date shall mean the last Business Day of each month of each Plan Year unless the Committee shall, in its discretion, determine that the Valuation Date of such Investment Fund shall occur more frequently.

**SECTION 2.**

## PARTICIPATION

2.1    (a)  Each Employee shall be eligible to participate in the Plan as of any Enrollment Date following the date he or she becomes an Employee, and shall commence such participation in the Plan by duly filing with the Employer and the Administrative Service Agency, in a manner prescribed by the Committee, by the tenth day of the calendar month preceding such Enrollment Date or such other date as the Committee may determine, a Participation Agreement and any enrollment forms or other pertinent information concerning the Employee and his or her Beneficiary which the Committee may require; *provided, however,* that in no event shall any deferral be accepted until the first Enrollment Date following the date on which such Participation Agreement is filed.

(b)    Each Employee enrolling in the Plan shall provide the Administrative Service Agency, at the time of initial enrollment and thereafter if there are any changes, with such information as may be required by the Committee.

2.2    Participation in the Plan by Employees shall be wholly voluntary.

2.3    The participation of a Participant shall cease upon payment to the Participant of the entire value of his or her Plan Benefit or upon the Participant's death prior to such payment.

## SECTION 3.

## AMOUNTS DEFERRED

3.1 (a) A Participant may elect to defer Compensation under the Plan by authorizing, on his or her Participation Agreement, regular payroll deductions that do not in the aggregate exceed the limitations of Section 3.2.

(b) A Participant may increase or decrease the rate of deferral of his or her Compensation, within the limitations of Section 3.2, as of any Enrollment Date by duly filing a new Participation Agreement, or such other form authorized for such purpose by the Committee, with the Employer and the Administrative Service Agency by the tenth day of the calendar month preceding such Enrollment Date, or such other date during the calendar month preceding such Enrollment Date as the Committee may determine.

(c) A Participant may discontinue, or temporarily suspend, his or her deferral of Compensation as of any Enrollment Date by giving written notice thereof to the Employer and the Administrative Service Agency at least twenty, or such other number as the Committee may determine, days prior to such date.

3.2 (a) The amount that may be deferred by a Participant for any Plan Year shall be a minimum of $260 and shall not exceed the lesser of:

(i) $11,000 or such other greater amount as may be permitted pursuant to Section 457(e)(15) of the Code, and

(ii) 100% of the Participant's Includible Compensation for the Plan Year.

(b) Notwithstanding the limitation provided for in Section 3.2(a), a Participant may file an election in the manner provided by the Committee to have the catch-up limitation set forth in this Section 3.2(b) apply to the determination of the maximum amount that may be

deferred during one or more of the last three Plan Years ending before attainment of the

Participant's Normal Retirement Age.  If the catch-up limitation is elected, the maximum amount

that may be deferred for each of the Plan Years covered by the election shall not exceed the

lesser of:

        (i)       twice the dollar amount set forth in Section 3.2(a)(i); and

        (ii)      the sum of the limitations provided for in Section 3.2(a) for all

Plan Years the Participant was eligible to participate in the Plan or an eligible deferred

compensation plan pursuant to Section 457 of the Code, minus the aggregate amount

actually deferred for such Plan Years(disregarding any amounts deferred pursuant to

Section 3.2(c)).

        A Participant may not elect to have this Section 3.2(b)(i) apply more than

once, whether or not the Participant rejoins the Plan after Severance from Employment

        (c)     (i)  All Participants who have attained age 50 before the close of a Plan

Year and who are not permitted to defer additional Compensation pursuant to Section

3.2(a) for such Plan Year, due to the application of any limitation imposed by the Code or

the Plan, shall be eligible to make additional catch-up contributions in accordance with,

and subject to, the limitations of this Section 3.2(c) and Section 414(v) of the Code and

the Treasury Regulations thereunder.

        (ii)      additional catch-up contributions pursuant to this Section 3.2(c) shall not

exceed the lesser of:

(A)    the excess of 100% of Participant's Includible Compensation for the Plan Year over the sum of any other Amounts Deferred by the Participant for such Plan Year; and

(B)    $1,000, or such greater amount as may be permitted by Section 414(v)(2)(B) of the Code.

(d)    Notwithstanding anything in Sections 3.2(b) and 3.2(c) to the contrary, if a Participant who is eligible to make an additional catch-up contribution under Section 3.2(c) for a Plan Year in which the Participant has elected to make a catch-up contribution under Section 3.2(b), such Participant is entitled to the greater of :

(i)    the catch-up contribution limitation amount under Section 3.2(b); and

(ii)    the additional catch-up contribution amount under Section 3.2(c).

(e)    Notwithstanding the limitation provided for in Section 3.2(a),  any Participant who is entitled to reemployment rights pursuant to USERRA and who is so reemployed in accordance with the provisions of such law may elect to make such additional deferrals as are permitted or required by USERRA.

3.3    The Trustee shall withhold or cause to be withheld from any amounts distributed in respect of a Participant's Plan Benefit or in respect of a Qualified Domestic Relations Order all federal, state, city or other taxes as shall be required pursuant to any law or governmental ruling or regulation, including, but not limited to, Treasury Regulations.

3.4     In the event that any Amounts Deferred under the Plan for any Plan Year exceed the limitations provided for in Section 3.2, any such excess deferrals shall be distributed to the Participant, with allocable net income, as soon as practicable after the Administrative Service Agency determines that the amount was an excess deferral.

**SECTION 4.**

## INVESTMENT OF AMOUNTS DEFERRED AND ROLLOVER CONTRIBUTIONS

4.1     All amounts of Compensation deferred in accordance with Section 3 shall be paid by the Employer as promptly as possible, but in no event later than two Business Days from the applicable payroll date, to the Trustee and shall be invested promptly in accordance with the investment directions of the Participant by the Trustee (but in no event later than two Business Days following receipt thereof by the Trustee) in the Investment Funds provided by one or more Financial Organizations appointed by the Committee in accordance with the Regulations, to be held, managed, invested and reinvested in accordance with the applicable agreement entered into by the Committee or the Trustee with each such Financial Organization. The Committee shall have the right in its sole discretion to replace any Financial Organization or Investment Fund with a successor Financial Organization or Investment Fund or to select any additional Financial Organization or Investment Fund and to incur any and all reasonable fees and expenses on behalf of the Plan and to allocate such fees and expenses among Accounts in connection with such replacement or addition.

4.2     An Employee who has enrolled in the Plan pursuant to Section 2 shall, by filing a direction in writing or in such other form as the Committee may authorize with the Administrative Service Agency, specify the percentage (in multiples of one percent or such other percentage as may be prescribed by the Committee from time to time) of the amount of his or her Amounts Deferred, Section 457 Transfers and Rollover Contributions that shall be allocated to each Investment Fund made available by the Committee; *provided, however*, that the same percentages shall apply to the Rollover Account as apply to the Account.

4.3     Any investment direction given by a Participant shall be deemed to be a continuing direction until changed.  A Participant may change his or her investment direction

16

with respect to future Amounts Deferred, future Section 457 Transfers and future Rollover

Contributions, as of any Enrollment Date, by giving notice in writing or in such other form as the

Committee may authorize to the Administrative Service Agency at least one Business Day prior

to such Enrollment Date; *provided, however*, that the same percentages shall apply to the

Rollover Account as apply to the Account.  All future Amounts Deferred, future Section 457

Transfers and future Rollover Contributions shall be invested by the Trustee in the Investment

Funds in accordance with such changed direction.

        4.4     (a)  As of any Valuation Date during a Plan Year, a Participant may direct,

by giving notice in writing or in such other form as the Committee may authorize, to the

Administrative Service Agency that all, or any multiple of one percent (or such other percent as

may be prescribed by the Committee from time to time), of his or her interest in any of the

Investment Funds be liquidated and the proceeds thereof transferred to one or more other

Investment Funds in the proportions directed by such Participant.

        (b)     If the Trustee or any Financial Organization appointed by the Committee

shall advise the Committee that it is not reasonably able to prudently liquidate the necessary

amount and transfer it from one of the Investment Funds to another, the amount to be transferred

with respect to each Participant who duly requested such a transfer may be reduced in proportion

to the ratio which the aggregate amount that the Trustee or the Financial Organization has

advised the Committee may not prudently be so transferred bears to the aggregate amount that all

Participants have duly requested be so transferred.  Regardless of any Participant's investment

direction, no transfer between Investment Funds may be made in violation of any restriction

imposed by the terms of the agreement between the Committee or the Trustee and a Financial

Organization providing any Investment Fund or of any applicable law.  Notwithstanding

anything in this Section 4.4(b) to the contrary, the Trustee or the Financial Organization may have the right, without prior notice to any Participant, to suspend for a limited period of time daily transfers between and among Investment Funds for one or more days if the Trustee or the Financial Organization determines that such action is necessary or advisable (i) in light of unusual market conditions, (ii) in response to technical or mechanical problems with the Plan's automated system, if any, or the Plan's third-party record keeper and (iii) in connection with any suspension of normal trading activity on the New York Stock Exchange.

   4.5 The Administrative Service Agency shall have the right to decline to implement any investment direction upon determination that:  (i) the person giving the direction is legally incompetent to do so; (ii) implementation of the investment direction would be contrary to the Plan or applicable law or governmental ruling or regulation including, but not limited to, Treasury Regulations; or (iii) implementation of the investment direction would be contrary to a court order, including, but not limited to, a Qualified Domestic Relations Order.

   4.6 Each Participant is solely responsible for the investment and allocation of his or her Plan Benefit in and among the Investment Funds and shall assume all risk in connection with any decrease in the value of any or all of the Funds.  Neither the Committee, any Trustee, any Employer nor the Administrative Service Agency is empowered to advise a Participant as to the manner in which such Plan Benefit shall be allocated among the Investment Funds.  The fact that a particular Investment Fund is available to Participants for investment under the Plan shall not be construed as a recommendation for investment in such Investment Fund.  Any investment guidance or advice services provided by the Plan to Participants shall not be considered a violation of this Section 4.6.

4.7    (a)    The entire value of each Participant's Account and Rollover Account and each Alternate Payee Account under the Plan shall be set aside and held in the Trust Fund pursuant to the Trust Agreement for the exclusive benefit of Participants and their Beneficiaries and Alternate Payees and defraying reasonable expenses of the Plan and of the Trust Fund pursuant to Section 5.3.

(b)    Each Participant shall be 100 percent vested at all times in his or her Plan Benefit in accordance with the terms of the Plan. Each Alternate Payee shall be 100 percent vested at all times in his or her Alternate Payee Account in accordance with the terms of the Plan.

4.8    (a)    Notwithstanding any other provision of the Plan, during any period when an Alternate Payee Account is created and the corresponding interest in the Trust Fund is segregated on behalf of an Alternate Payee pursuant to a Qualified Domestic Relations Order as provided in Section 11.4(b), the Alternate Payee may be entitled to direct the investment of such interest in accordance with this Section 4 as if he or she were the Participant, to the extent provided in such order.  In the event that an Alternate Payee fails to specify an investment direction, such Alternate Payee's interest in the Trust Fund shall be invested in the same manner as the relevant Participant's Plan Benefit as of the date of creation of the Alternate Payee Account.

(b)    Notwithstanding any other provision of the Plan, during any period following the death of a Participant and prior to distribution of the entire Plan Benefit of such Participant, such Participant's Beneficiary shall be entitled to direct the investment of such Plan Benefit, or, as applicable, his or her proportional interest in such Plan Benefit, in accordance with this Section 4 as if he or she were the Participant.

4.9    No power of attorney, other than one properly executed in accordance with Section 5-1501 of Title 15 of the General Obligations Law of the State, as such may be amended from time to time, shall be effective to permit an attorney-in-fact to make any investment direction on behalf of a Participant except upon specific determination by the Administrative Service Agency that the instrument expressly grants the power to act on behalf of the Participant regarding investment direction under this Plan.

**SECTION 5.**

## ACCOUNTS AND RECORDS OF THE PLAN

5.1    (a)  The Administrative Service Agency shall establish and maintain an

Account and, as necessary, a Rollover Account in respect of each Participant (or in the case of a

Rollover Account, a Beneficiary who is a Participant's Surviving Spouse, if applicable) and, to

the extent his or her entire Plan Benefit has not been distributed, each former Participant showing

the value of his or her Plan Benefit, the value of the portion of his or her Plan Benefit, if any,

which is invested in each Investment Fund and other relevant data pertaining thereto.  Each

Account and Rollover Account shall be adjusted as of each Valuation Date to reflect all Units or

dollars credited thereto and valued as provided in Section 5.2(b) less all Units or dollars

distributed, withdrawn or deducted therefrom in accordance with the terms of the Plan.  With

respect to each Participant, all Amounts Deferred, all Section 457 Transfers in accordance with

Section 7.5(b)(i) and all Rollover Contributions in accordance with Section 7.5(b)(ii) shall be

credited to his or her Account or Rollover Account, as applicable.

(b)    Each Participant and, for any period following the death of a Participant

and prior to distribution of the entire Plan Benefit of such Participant, each Beneficiary shall be

furnished with a written statement of his or her Account and Rollover Account (including the

value of the interest he or she has, if any, in each Investment Fund and the amount of and

explanation for each allocation to or deduction from his or her Account and Rollover Account

since the last statement provided) at least quarterly.  During the period prior to distribution of his

or her entire interest under the Plan, each Alternate Payee shall be furnished with a written

statement of his or her Alternate Payee Account (including the value of the interest he or she has,

if any, in each Investment Fund and the amount of and explanation for each allocation to or

deduction from his or her Alternate Payee Account since the last statement provided) at least quarterly.

(c)     The establishment and maintenance of, or allocations and credits to, the Account and Rollover Account of any Participant shall not vest in such Participant or his or her Beneficiary any right, title or interest in and to any Trust Fund assets or Plan benefits except at the time or times and upon the terms and conditions and to the extent expressly set forth in the Plan and the Trust Agreement.  The establishment and maintenance of, or allocations and credits to, the Alternate Payee Account of any Alternate Payee shall not vest in such Alternate Payee any right, title or interest in and to any Trust Fund assets or Plan benefits except at the time or times and upon the terms and conditions and to the extent expressly set forth in the Qualified Domestic Relations Order, the Plan and the Trust Agreement.

5.2     (a)  The Plan Benefit shall equal the value of a Participant's Account and Rollover Account which shall be determined by aggregating the value of his or her separate interests, if any, in each Investment Fund.

(b)     The Trust Fund shall consist of the Investment Funds.  The aggregate value of the Accounts and the Rollover Accounts, the Alternate Payee Accounts and any reserve for expenses and suspense accounts, if any, shall be equal to the value of the Trust Fund.  Each Investment Fund shall be valued either in Units or in dollars.  As of each Valuation Date, each Fund shall be valued pursuant to the Trust Agreement and the agreements between the Committee or the Trustee and the  Financial Organizations to reflect the effect of income received and accrued, realized and unrealized profits and losses, and all other transactions of the preceding period.

5.3     (a)  The expenses of administering the Plan, including (i) the fees and expenses of the Financial Organizations and Administrative Service Agency for the performance of their duties under the Plan, (ii) the expenses incurred by the Committee or any of its members or any Trustee in the performance of their duties under the Plan (including reasonable compensation for any legal counsel, certified public accountants, consultants, and agents and cost of services rendered in respect of the Plan and the Trust Agreement (as provided therein)), and (iii) all other proper charges and disbursements of the Financial Organizations, Administrative Service Agency, the Committee or its members (including settlements of claims or legal actions approved by counsel to the Plan) or any Trustee shall be paid out of the Trust Fund, and allocated to and deducted from the Accounts and Alternate Payee Accounts as of each Valuation Date, unless paid by the Committee from State funds allocated for such expenses or the Employer elects to pay such expenses directly.

(b)     Brokerage fees, transfer taxes and any other expenses incident to the purchase or sale of securities by the Financial Organizations for the Investment Funds shall be deemed to be part of the cost of such securities, or deducted in computing the proceeds therefrom, as the case may be.  Taxes, if any, of any and all kinds whatsoever which are levied or assessed on any assets held or income received by the Trust Fund shall be allocated to and deducted from the Accounts and Alternate Payee Accounts in accordance with the provisions of this Section 5.

**SECTION 6.**

## WITHDRAWALS FOR UNFORESEEABLE EMERGENCIES;
## WITHDRAWALS OF SMALL ACCOUNTS; LOANS

6.1     Upon a showing by a Participant of an unforeseeable emergency, the
Administrative Service Agency may, in its sole discretion, permit a payment to be made to the
Participant in an amount which does not exceed the lesser of (i) the amount reasonably needed to
meet the financial need created by such unforeseeable emergency or (ii) an amount which,
together with any prior distribution or withdrawal, does not exceed the value of the Participant's
Plan Benefit determined as of the most recent Valuation Date.  Any such payment shall be made
from the Trust Fund by the Trustee upon the direction of the Administrative Service Agency and
shall be withdrawn by the Trustee pro rata from the Investment Funds in which the Participant
has an interest, unless the Participant specifies in the request for such a payment the portion of
the total amount to be withdrawn by the Trustee from each Investment Fund.  Such payment
shall first be charged to the Account of the Participant and, if necessary, then to the Rollover
Account.  All payments shall be made in one lump cash sum within sixty days after approval of
the request.

6.2     (a)  For purposes of this Section 6, an unforeseeable emergency is defined,
as required by the Treasury Regulations promulgated under Section 457 of the Code, as a severe
financial hardship of a Participant resulting from an illness or accident of the Participant, the
Participant's spouse or the Participant's dependent, as defined in Section 152(a) of the Code, loss
of the Participant's property due to casualty, or other similar extraordinary and unforeseeable
circumstances arising as a result of events beyond the control of the Participant.  In accordance
with the Treasury Regulations, the need to send a Participant's child to college or the desire to
purchase a home does not constitute an unforeseeable emergency.

(b)     For purposes of this Section 6, an amount will not be considered to be reasonably needed to meet the financial need created by an unforeseeable emergency to the extent that such need is or may be relieved (i) through reimbursement or compensation by insurance or otherwise, (ii) by liquidation of a Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship, or (iii) by cessation of deferrals under the Plan.

6.3     A Participant with respect to whom his or her Account, irrespective of the amount in the Participant's Rollover Account, does not exceed $5,000 (or such greater amount as may be permitted by Section 401(a)(11) of the Code) may elect at any time to receive a lump sum distribution, not to exceed $5,000 of his or her Account and Rollover Account at least sixty days following such election, *provided* that:

(a)     there has been no Amount Deferred by such Participant during the two-year period ending on the date of distribution, and

(b)     there has been no prior distribution elected by such Participant pursuant to this Section 6.3.

6.4     With respect to a Participant or an Alternate Payee whose Account or Alternate Payee Account does not exceed the amount set forth in Section 6.3, the Committee, at its discretion, may direct the Trustee to distribute the Participant's Account and Rollover Account or the Alternate Payee's Alternate Payee Account as soon as practicable following the Participant's Severance from Employment or in accordance with the requirements and provisions of Sections 6.3(a) and 6.3(b).

6.5     On or after January 1, 2004, upon request of an eligible Participant, the Committee may, in its sole discretion and on such terms and conditions as it shall prescribe

under written uniform rules which shall be deemed to be a part of the Plan, direct the Trustee to make loans to such eligible Participant. Plan loans shall be granted to those Participants who are active Employees, and, if the Committee shall determine, to those Participants who are on an approved leave of absence from their Employer. Each Participant shall have only one outstanding Plan loan at a time. The principal amount of any Plan loan shall be for an amount equal to at least $1,000, or such other amount as the Committee shall determine, and shall not exceed the lesser of (i) 50% of the value of the sum of (A) the Participant's Account and (B) the Participant's Rollover Account, if applicable, and (ii) $50,000. All Plan loans, other than those for the purpose of acquiring the dwelling unit which is, or within a reasonable time shall be, the principal residence of the Participant, shall be repaid over a non-renewable repayment period of five years. A Plan loan made for acquiring a principal residence shall be repaid over a non-renewable repayment period of up to 15 years, or such other term as the Committee shall determine. Each Plan loan granted shall bear a rate of interest equal to one percentage point above the prime interest rate as published in the Wall Street Journal, or such other reasonable rate of interest as the Committee shall determine. A Plan loan shall be made first from the Participant's Account, until exhausted, and then from his or her Rollover Account. Any Plan loan shall be repaid in substantially equal installments of principal and accrued interest which shall be paid at least quarterly, subject to the methods and procedures as shall be determined by the Committee and the Administrative Service Agency. All Plan loans shall be made from of the Trust Fund and notes evidencing such obligations shall be considered assets of the Trust Fund. All Plan loans shall be secured, as of the date of the Plan loan, by the sum of (i) the Participant's Account and (ii) the Participant's Rollover Account, if applicable, *provided*, *however*, that no more than 50% of such Participant's Account balance shall be used as security for the Plan loan.

If a Participant fails to make any scheduled repayment of his or her Plan loan within 90 days of its due date, or such other period as the Committee shall determine, such Participant shall be considered in default and the Administrative Service Agency shall declare a deemed distribution to have occurred with respect to such Plan loan, effective as of the date of the default.  The Committee, may in its sole discretion, establish or change from time to time, the standards or requirements for making any Plan loan, including, without limitation, assessing an administrative fee against the Participant for such Plan loan.

**SECTION 7.**

**DISTRIBUTIONS FROM THE PLAN AND OTHER ELIGIBLE RETIREMENT PLANS**

7.1      (a)  Except as otherwise provided in Section 6, a Participant may not receive distribution of his or her Plan Benefit at any time prior to the earlier of (i) such Participant's Severance from Employment with the Employer or (ii) the Plan Year in which such Participant attains age 70½.   Upon a Participant's Severance from Employment with the Employer for any reason other than death or upon commencement of the Plan Year in which he or she attains age 70½, the Participant shall be entitled to receive an amount equal to the value of his or her Plan Benefit, which shall be paid in cash by the Trustee from the Trust Fund in accordance with one of the methods described in Section 7.3 and as of the commencement date elected by the Participant in accordance with the procedures prescribed under Section 7.4(a).  In the case of a Participant who continues in service with the Employer following his or her attainment of age 70½, such Participant may elect to commence the distribution of his or her Plan Benefit and such election shall designate a method of payment in accordance with Section 7.3; *provided, however*, that payments may not commence earlier than forty-five days, or such other number the Committee shall determine, following the Participant's attainment of age 70½.

(b)      Notwithstanding anything in this Section 7.1 to the contrary, in accordance with the requirements of Section 401(a)(9) of the Code, distributions shall commence no later than the April 1st following the close of the Plan Year in which (i) the Participant attains age 70½ or (ii) the Participant Severs from Employment, whichever is later.

7.2      If a Participant dies before receiving final distribution of his or her Plan Benefit, an amount equal to the value of the unpaid portion thereof as of the date of death shall be paid in cash by the Trustee from the Trust Fund to the Participant's Beneficiary by one of the

methods described in Section 7.3; *provided*, *however*, that if the Participant dies after payments have commenced then payment to the Participant's Beneficiary must be made in accordance with the provisions of Section 401(a)(9) of the Code.

7.3      (a)  Subject to the following provisions of this Section 7.3, any payment made under this Section 7 shall be made in one of the following methods, as the Participant (or, in the case of the death of a Participant, his or her Beneficiary) may elect pursuant to Section 7.4 hereof:

(i)      one lump cash sum payment; or

(ii)      with respect to such Participant's Account and Rollover Account, substantially equivalent monthly, quarterly, semi-annual or annual installment payments; *provided*, *however*, that a Participant (or, in the case of the death of a Participant, his or her Beneficiary) may elect to receive (A) an initial installment payment in a specified amount and (B) the balance of his or her Account in substantially equivalent monthly, quarterly, semi-annual or annual installment payments as long as the initial payment is in an amount greater than the amount of the subsequent installment payments at the time they commence and such subsequent payments commence within two years of such initial payment.

(iii)      A Participant who elects to receive installment payments or who is currently receiving installment payments pursuant to Section 7.3(a)(ii), may elect, in accordance with procedures established by the Administrative Service Agency, to receive a portion of his or her Account or Rollover Account distributed in a lump sum; *provided, however*, that no lump sum payment shall be less than $500.00, or such other amount as the Committee shall determine, and *provided further*, that such elections shall not be

made more than twelve times per Plan Year, or such other number as the Committee shall

determine.  Such lump sum payment shall not result in a discontinuation of subsequent

installment payments; *provided, however*, that such subsequent payments may be

redetermined in accordance with methods and procedures established by the

Administrative Service Agency.

(b)    If a Participant (or, in the case of death of a Participant, his or her

Beneficiary) elects a lump sum payment, pursuant to Sections 7.3(a)(i) or 7.3(a)(iii), the value of

the Participant's Plan Benefit shall be determined as of the Valuation Date coincident with or last

preceding the date on which the Plan Benefit is withdrawn from the Investment Funds and

liquidated for distribution.

(c)    If a Participant (or, in the case of death of a Participant, his or her

Beneficiary) elects to receive installment payments, subject to Section 7.3(a)(ii), such

Participant's Account and Rollover Account shall continue to participate in the investment

performance of the Investment Fund or Funds in which such amounts are invested and to bear its

allocable share of administrative and investment expenses until the Valuation Date coincident

with or last preceding the date on which such Plan Benefit amounts are withdrawn from the

Investment Funds and liquidated for distribution; *provided*, *however*, that the amount of the

installments need not be redetermined to reflect changes in the value of the Account more

frequently than annually.   All such redeterminations shall be made by the Administrative

Service Agency in accordance with procedures of uniform application.

7.4    (a)  In the case of the Participant's Severance from Employment with the

Employer or death, a distribution election may be made by the Participant or his or her

Beneficiary prior to, or after, payments commence pursuant to the provisions of this Section 7.

Such election shall specify the form of payment described in Section 7.3 elected and the date on which payments shall commence; *provided, however*, that payments may not commence earlier than forty-five days, or such other number the Committee shall determine, following the Participant's Severance from Employment or death. A Participant or his or her Beneficiary, including a Participant or his or her Beneficiary who is currently receiving distributions under the Plan, irrespective of the date on which such distributions commenced, may change both the timing and the form of payment elected in accordance with procedures established by the Administrative Service Agency, subject to Section 7.6.

(b)    If a Participant dies before distribution of his or her Plan Benefit has commenced, a distribution will be made to the Beneficiary pursuant to the Beneficiary's election duly filed with the Administrative Service Agency in accordance with the provisions of Section 7.4(a); *provided, however*, any distribution to a Beneficiary shall be made in accordance with the provisions of Section 401(a)(9) of the Code. All distributions shall commence not later than the close of the Plan Year immediately following the Plan Year in which the Participant died, or, in the event such Beneficiary is the Participant's Surviving Spouse, on or before the close of the Plan Year in which such Participant would have attained age 70½, if later (or, in either case, on any later date prescribed by the Treasury Regulations). If such Beneficiary who is also the Surviving Spouse dies after the Participant's death but before distributions to such Beneficiary commence, this provision shall be applied to require payment of any further benefits as if such Surviving Spouse were the Participant.

7.5    (a)  In connection with a Participant's Severance from Employment, the Distributee may elect, at the time and in the manner prescribed by the Administrative Service Agency, to have all or any portion of the Participant's Account and Rollover Account that

qualifies as an Eligible Rollover Distribution paid directly to the trustee of an Eligible

Retirement Plan, *provided* that such other plan provides for the acceptance of such amounts by

the trustee.  The Plan shall provide written information to Distributees regarding Eligible

Rollover Distributions to the extent required by Section 402(f) of the Code.

(b)       Compensation previously deferred by a Participant, a Beneficiary who is a

Participant's Surviving Spouse or Alternate Payee pursuant to another eligible deferred

compensation plan under Section 457 of the Code maintained by another employer that is a state,

political subdivision of a state, any agency or instrumentality of a state or political subdivision of

a state shall be accepted for transfer by the Trustee in the form and in the manner specified by

the Administrative Service Agency.  All such Section 457 Transfers shall be credited to the

Participant's Account or the Alternate Payee Account and shall be invested in accordance with

the investment direction of the Participant, the Beneficiary who is a Participant's Surviving

Spouse or Alternate Payee pursuant to Sections 4.2, 4.3, or 4.8, whichever is applicable; such

Section 457 Transfers are subject to all of the terms and conditions of the Plan.

(ii)       (A)  An accrued benefit of a Participant, a Beneficiary who is a

Participant's Surviving Spouse or Alternate Payee under an Eligible Retirement Plan that

is distributed to the Participant, a Beneficiary who is a Participant's Surviving Spouse or

Alternate Payee or is directly rolled over to the Plan as an Eligible Rollover Distribution

may be accepted as a Rollover Contribution by the Trustee in the form and in the manner

specified by the Administrative Service Agency; *provided, however*, that such

Participant, Beneficiary who is a Participant's Surviving Spouse or Alternate Payee has

made an Investment Fund direction pursuant to Sections 4.2, 4.3, or 4.8, whichever is

applicable, and filed a written request with the Administrative Service Agency requesting that such transfer be accepted.

(B)    The Administrative Service Agency, in accordance with the Code and procedures established by the Committee, shall, as soon as practicable following its receipt of the written request of a Participant, a Beneficiary who is a Participant's Surviving Spouse or Alternate Payee, determine whether the Rollover Contribution shall be accepted by the Plan.  Any written request filed by a Participant, a Beneficiary who is a Participant's Surviving Spouse or Alternate Payee pursuant to this Section 7.5(b) shall set forth the fair market value of such Rollover Contribution and a statement satisfactory to the Administrative Service Agency that the amount to be transferred constitutes a Rollover Contribution.  In the event the Administrative Service Agency permits the transfer of the Rollover Contribution, the Trustee shall accept such Rollover Contribution and the transfer of such Rollover Contribution shall be deemed to have been made on the Valuation Date next following the date on which it was paid over to the Trustee.  The Rollover Contribution shall be maintained in a separate, fully vested Rollover Account for the benefit of the contributing Participant or the Beneficiary who is a Participant's Surviving Spouse and, in the case of an Alternate Payee, the Alternate Payee Account, and shall be invested in accordance with the investment direction of the Participant, the Beneficiary who is a Participant's Surviving Spouse or Alternate Payee, pursuant to Sections 4.2, 4.3 or 4.8, whichever is applicable.

(C)    All amounts so transferred shall be credited to the Participant's Rollover Account or Alternate Payee Account and shall not be available for distribution until ninety days, or other such date specified by the Administrative Service Agency,

following the date on which such amounts are credited to the Rollover Account.  No other contributions shall be allocated to the Rollover Account.

(c)    With respect to trustee-to-trustee transfers, a Participant or Beneficiary may elect, in accordance with procedures established by the Administrative Service Agency, to have all or any portion of the value of his or her Account and Rollover Account transferred to the trustee of a defined benefit governmental plan of the State as described in Section 414(d) of the Code; *provided, however*, that such transfer is for the purchase of permissive service credit (as defined in Section 415(n)(3)(A) of the Code) under such plan or a repayment of contributions and earnings with respect to a forfeiture of service under such plan.

7.6    Notwithstanding anything in the Plan to the contrary, all distributions of a Plan Benefit to a Participant or his or her Beneficiary shall commence in accordance with the amount and timing requirements of the Treasury Regulations under Section 401(a)(9) of the Code, which are incorporated herein by reference.

**SECTION 8.**

## DESIGNATION OF BENEFICIARIES

8.1     Each Participant shall file with the Administrative Service Agency a written designation of one or more persons as the Beneficiary who shall be entitled to receive the Plan Benefit, if any, payable under the Plan upon his or her death.  A Participant may from time to time revoke or change his or her Beneficiary designation without the consent of any prior Beneficiary by filing a new designation with the Administrative Service Agency.  The last such designation received by the Administrative Service Agency shall be controlling; *provided*, *however*, that no designation or change or revocation thereof shall be effective unless received by the Administrative Service Agency prior to the Participant's death, and in no event shall it be effective as of a date prior to such receipt.

8.2     If no such Beneficiary designation is in effect at the time of a Participant's death, or if no designated Beneficiary survives the Participant, or if no designated Beneficiary can be located with reasonable diligence by the Administrative Service Agency, the payment of the Plan Benefit, if any, payable under the Plan upon his or her death shall be made by the Trustee from the Trust Fund to the Participant's Surviving Spouse, if any, or if the Participant has no Surviving Spouse, or the Surviving Spouse cannot be located with reasonable diligence by the Administrative Service Agency, then to his or her estate.  If the Administrative Service Agency is in doubt as to the right of any person to receive such amount, it shall inform the Committee and the Trustee and the Trustee may retain such amount, without liability for any interest thereon, until the rights thereto are determined, or the Trustee may pay such amount into any court of appropriate jurisdiction or to any other person pursuant to applicable law and such payment shall be a complete discharge of the liability of the Trustee, Plan, Committee, Employer, Administrative Service Agency and Financial Organizations.  If the Beneficiary so

designated by the Participant shall die after the death of the Participant but prior to receiving a complete distribution of the amount that would have been paid to such Beneficiary had such Beneficiary's death not then occurred, then, for purposes of the Plan, the distribution that would otherwise have been received by such Beneficiary shall be paid to the Beneficiary's estate.

8.3     No power of attorney, other than one properly executed in accordance with Section 5-1501 of Title 15 of the General Obligations Law of the State, as such may be amended from time to time, shall be effective to permit an attorney-in-fact to make or change a Beneficiary designation on behalf of a Participant except upon specific determination by the Administrative Service Agency that the instrument expressly grants the power to act on behalf of the Participant regarding Beneficiary designation under this Plan.

### SECTION 9.

## ADMINISTRATION

9.1    Except as otherwise provided herein, the operation and administration of the Plan shall be the responsibility of the Committee.  The Committee shall have the power and the duty to take all action and to make all decisions necessary or proper to carry out its responsibilities under the Plan.  All determinations of the Committee as to any question involving its responsibilities under the Plan, including, but not limited to, interpretation of the Plan or as to any discretionary actions to be taken under the Plan, shall be solely in the Committee's discretion and shall be final, conclusive and binding on all parties.

9.2    Without limiting the generality of the foregoing, the Committee shall have the following powers and duties:

(a)    to require any person to furnish such information as it may request for the purpose of the proper administration of the Plan as a condition to receiving any benefit under the Plan;

(b)    to make and enforce such rules and regulations and prescribe the use of such forms as it shall deem necessary for the efficient administration of the Plan;

(c)    to interpret the Plan and to resolve ambiguities, inconsistencies and omissions;

(d)    to decide all questions concerning the Plan and the eligibility of any Employee to participate in the Plan;

(e)    to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan

(f)    to permit more lenient time periods than otherwise may be specified in Sections 2.1, 3.1(b), 3.1(c), 4.3, 6.1, 6.3, 6.5, 7.1(a) and 9.5 of the Plan; *provided, however*, in no

case may a Participant's election to commence Compensation deferrals, or to modify existing Compensation deferrals, be effective until notice of such election is filed with the Employer or Administrative Service Agency; and

(g)     to determine the methods and procedures for the implementation and use of any automated telephone, computer, internet, intranet or other electronic or automated system adopted by the Committee for purposes of Plan administration, including, without limitation, for receiving and processing enrollments and instructions with respect to the investment of assets allocated to a Participant's Account or Rollover Account and for such other purposes as may be designated from time to time.

9.3     Except as may be prohibited by applicable law, neither the Committee nor any member thereof, nor any person, firm or corporation to whom may be delegated any duty or power in connection with administering, managing or supervising the administration or management of the Plan or Trust Fund, shall be liable for anything done or omitted to be done by it or by them unless the act or omission claimed to be the basis for liability amounted to a failure to act in good faith or was due to gross negligence or willful misconduct; nor for the payment of any amount under the Plan; nor for any mistake of judgment made by it or on its behalf by a member of the Committee; nor for the neglect, omission or wrongdoing of any member of the Committee.  No member of the Committee, nor any delegate, shall be personally liable under any contract, agreement, bond or other instrument made or executed by him or her or on his or her behalf in connection with the Plan or Trust Fund.

9.4     Except as otherwise provided in the Plan and the Trust Agreement, the Trustee shall have responsibility with respect to the control or management of the assets of the Plan and the Trust Fund.  The Committee shall periodically review the performance and methods

of the Trustee and the Committee may appoint and remove or change the Trustee.  The

Committee shall have the power to appoint or remove one or more Financial Organizations and

to delegate to such Financial Organization(s) authority and discretion to manage (including the

power to acquire and dispose of) the assets of the Plan and Trust Fund in accordance with the

Regulations and shall periodically review the performance and methods of such Financial

Organization(s) and may direct the acquisition or disposition of the assets in any Investment

Fund.

    9.5  (a)  The Committee shall have general authority under the Plan.  The

decisions of the Committee shall be final, binding and conclusive on all interested persons for all

purposes.  The Committee may delegate its general authority as it deems appropriate in

accordance with the terms of the Plan and all applicable Code sections and Treasury Regulations;

*provided*, *however*, that such delegation shall be subject to revocation at any time at the

discretion of the Committee.  Notwithstanding any other provision of the Plan, the Committee's

general authority shall include the right to review, revise, modify, revoke, or vacate any decision

made or action taken by any party under the Plan which right includes, but is not limited to, the

right to review, revise, modify, revoke, or vacate any decision of the Review Committee at any

time upon reasonable notice to the claimant.

    (b)  Any claim to rights or benefits under the Plan, including, without

limitation, any purported Qualified Domestic Relations Order, or request for hardship

withdrawal under Section 6 must be filed in writing with the Committee, or with such other

entity as the Committee may designate.  Within sixty days after receipt of such claim, the

Committee, or such other entity designated by the Committee, shall notify the claimant and, if

such claimant is not the Participant, any Participant against whose Plan Benefit the claim is

made, that the claim has been granted or denied, in whole or in part.  Notice of denial of any

claim in whole or in part by the Committee, or by such other entity designated by the Committee,

shall include the specific reasons for denial and notice of the rights granted by Section 9.5(c).

(c)     Any claimant or Participant who has received notice of denial or grant, in

whole or in part, of a claim made in accordance with the foregoing subsection (b) may file a

written request within thirty days of receipt of such denial for review of the decision by the

Review Committee.  Within ninety days after receipt of such request for review, the Review

Committee shall notify the claimant and, as applicable, the Participant, that the claim has been

granted or denied, in whole or in part; *provided*, *however*, that the Review Committee may in its

discretion extend such period by up to an additional 120 days upon notice to the claimant and, as

applicable, the Participant, prior to expiration of the original ninety days that such additional

period is needed for proper review of the claim.  Notice of denial of any claim in whole or in part

by the Review Committee shall include the specific reasons for denial and shall be final, binding

and conclusive on all interested persons for all purposes.

(d)     Subject to the discretion of the Committee or such other entity as the

Committee may designate to determine otherwise, no distribution of any Plan Benefit shall be

permitted during any period during which a claim, including, without limitation, a purported

Qualified Domestic Relations Order, against all or part of such Plan Benefit is being reviewed in

accordance with the provisions of this Section 9.5.  If the Trustee or the Administrative Service

Agency reasonably believes that a claim, including, without limitation, a purported Qualified

Domestic Relations Order, against all or part of any Plan Benefit is likely to be asserted, such

Trustee or Administrative Service Agency shall notify the Committee and it shall be within the

discretion of the Committee to refuse to permit any distribution of all or part of such Plan Benefit pending determination of such claim.

        9.6      The Committee shall arrange for the engagement of legal counsel and certified public accountants, who may be counsel or accountants for the Employer, and other consultants, and make use of agents and clerical or other personnel, for purposes of this Plan. The Committee may rely upon the written opinions of counsel, accountants and consultants, and upon any information supplied by the Trustee, a Financial Organization or Administrative Service Agency appointed in accordance with the Regulations, and delegate to any agent or to any member of the Committee its authority or the authority of the Employer to perform any act hereunder, including without limitation those matters involving the exercise of discretion; *provided*, *however*, that such delegation shall be subject to revocation at any time at the discretion of the Committee.

        9.7      No member of the Committee shall be entitled to act on or decide any matters relating solely to such member or any of his or her rights or benefits under the Plan.

        9.8      Any action of the Committee may be taken at a meeting.  The Committee shall establish its own procedures and the time and place for its meetings and provide for the keeping of minutes of all meetings.

        9.9      Notwithstanding any other provision hereof, the Plan shall at all times be operated in accordance with the requirements of applicable law, including, without limitation, the Regulations.

**SECTION 10.**

41

## AMENDMENT OR TERMINATION

10.1     (a)  Subject to Section 10.1(b) and any requirements of State or federal law, the Committee reserves the right at any time and with or without prior notice to amend, suspend or terminate the Plan, any deferrals thereunder, the Trust Agreement and any Investment Fund, in whole or in part and for any reason and without the consent of any Employee, Participant, Beneficiary or other person.  The Plan shall be terminated automatically upon complete and final discontinuance of all deferrals thereunder.

(b)     No amendment or modification shall be made which would retroactively impair any individual's rights to any benefits under the Plan, except as provided in Section 10.1(c).

(c)     Any amendment, suspension or termination of any provisions of the Plan, any deferrals thereunder, the Trust Agreement or any Investment Fund may be made retroactively if required to meet any applicable requirements of the Code or any other applicable law.

10.2     Upon termination of the Plan, the Employer shall permit no further deferrals of Compensation under the Plan and all Plan Benefits and other interests in the Trust Fund shall thereafter be payable as provided in the Plan.  Any distributions, transfers or other dispositions of the Plan Benefits as provided in the Plan shall constitute a complete discharge of all liabilities under the Plan.  The Committee and the Trustee(s) shall remain in existence and the Trust Agreement and all of the provisions of the Plan which in the opinion of the Committee are necessary for the execution of the Plan and the administration and distribution, transfer or other disposition of interests in the Trust Fund shall remain in force.

### SECTION 11.

## GENERAL LIMITATIONS AND PROVISIONS

11.1    The Plan, as duly amended from time to time, shall be binding on each

Participant and his or her Surviving Spouse, heirs, administrators, trustees, successors, assigns,

and Beneficiaries and all other interested persons.

11.2    Nothing contained herein shall give any individual the right to be retained

in the employment of the Employer or affect the right of the Employer to terminate any

individual's employment.  The adoption and maintenance of the Plan shall not constitute a

contract between the Employer and any individual or consideration for, or an inducement to or

condition of, the employment of any individual.

11.3    If the Administrative Service Agency shall find that any person to whom

any amount is payable under the Plan is unable to care for his or her affairs, is a minor, or has

died, then it shall so notify the Committee and the Trustee, and any payment due him or her or

his or her estate (unless a prior claim therefor has been made by a Beneficiary, Surviving Spouse

or duly appointed legal representative or the time period during which a Beneficiary or Surviving

Spouse could make a claim under the Plan has not elapsed) may, if the Trustee so elects, be paid

to his or her spouse, a child, a relative, or any other person maintaining or having custody of

such person otherwise entitled to payment or deemed by the Trustee to be a proper recipient on

behalf of such person.  Any such payment shall be a complete discharge of all liability under the

Plan therefor.

11.4    (a)  Except insofar as may otherwise be required by law or in accordance

with this Section 11.4, no amount payable at any time under the Plan shall be subject in any

manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment,

garnishment, charge or encumbrance of any kind, and any attempt to so alienate such amount,

whether presently or thereafter payable, shall be void.  If any person shall attempt to, or shall, so

alienate any amount payable under the Plan, or any part thereof, or if by reason of bankruptcy or

other event happening at any time such amount would not be enjoyed by the person to whom it is

payable under the Plan, then the Trustee shall notify the Committee and, if it so elects, may

direct that such amount be withheld and that the same or any part thereof be paid to or for the

benefit of such person, his or her  spouse, children or other dependents, or any of them, in such

manner and proportion as the Trustee may deem proper.

     (b)     Payments with respect to a Participant's Plan Benefit may be made by the

Trustee from the Trust Fund to one or more Alternate Payees pursuant to the terms of a Qualified

Domestic Relations Order; *provided however*, that such Qualified Domestic Relations Order

shall not create any rights greater than the Participant's rights under the Plan.  Notwithstanding

any provisions of the Plan to the contrary, any distribution due to an Alternate Payee may be paid

in one lump sum as soon as practicable following the qualification of the order if the Alternate

Payee consents thereto; otherwise it shall be payable on or after the date on which the Participant

attains Earliest Retirement Age.  Upon receipt of a Qualified Domestic Relations Order by the

Plan, a portion of the Participant's Account and Rollover Account, which portion shall be

determined in accordance with the Qualified Domestic Relations Order, shall be segregated and

maintained on behalf of each Alternate Payee designated under such Qualified Domestic

Relations Order until payment is made to the Alternate Payee in accordance with this

Section 11.4 and the terms of the Plan.  No liability whatsoever shall be incurred by the

Committee, Trustee, Employer, Administrative Service Agency, Review Committee or any

Financial Organization solely by reason of any action taken in accordance with this Section 12.4

pursuant to the terms of a Qualified Domestic Relations Order.

11.5     Each Participant shall file with the Administrative Service Agency such pertinent information concerning himself or herself and his or her Beneficiary as the Committee may specify, and no Participant, Beneficiary or other person shall have any rights or be entitled to any benefits under the Plan unless such information is filed by or with respect to him or her.

11.6     All elections, designations, requests, notices, instructions, and other communications from a Local Employer, Employee, Participant, Beneficiary, Surviving Spouse or other person to the Committee, Administrative Service Agency or the Employer required or permitted under the Plan shall be in such form as is prescribed from time to time by the Committee, shall be mailed by first class mail or delivered to such location as shall be specified by the Committee, and shall be deemed to have been given and delivered only upon actual receipt thereof at such location.  Copies of all elections, designations, requests, notices, instructions and other communications from an Employee, Participant, Beneficiary, Surviving Spouse or other person to the Employer shall be promptly filed with the Administrative Service Agency.

11.7     All notices, statements, reports and other communications from a Local Employer, the Trustee or the Committee to any Employee, Participant, Beneficiary, Surviving Spouse or other person required or permitted under the Plan shall be deemed to have been duly given when delivered to, or when mailed by first class mail, postage prepaid and addressed to such Employee, Participant, Beneficiary, Surviving Spouse or other person at his or her address last appearing on the records of the Committee, the Trustee or the Local Employer.

11.8     The Committee may, upon the recommendation of the Administrative Service Agency, enlarge or diminish the time periods set forth in Sections 2.1, 3.1(b), 3.1(c), 4.3, 6.1, 6.3, 6.5 and 9.5; *provided* it determines that such action is necessary or desirable to facilitate

the proper administration of the Plan, and *provided further* that in no case may a Participant's election to commence Compensation deferrals, or to modify existing Compensation deferrals, be effective until notice of such election is filed with the Employer or Administrative Service Agency.

11.9    The amounts set aside and held in the Trust Fund shall be for the exclusive purpose of providing benefits to the Participants and their Beneficiaries and Alternate Payees and defraying expenses of Plan and Trust Fund administration and no part of the Trust Fund shall revert to any Employer; *provided, however,* that the setting-aside of any amounts to be held in the Trust Fund is expressly conditioned upon the following:  if an amount is set aside to be held in the Trust Fund by an Employer in a manner which is inconsistent with any of the requirements of Section 457(b) of the Code, such amount shall be returned to such Employer prior to the first day of the first Plan Year commencing more than 180 days after the date of notification of such inconsistency by the Secretary of the Treasury.  Any amounts so returned to the Employer, and the earnings thereon, shall be distributed to the Participants on whose behalf such amounts were set aside.

11.10   The Trust Fund shall be the sole source of benefits under the Plan and, except as otherwise required by applicable law, the Committee, the Employer and the Trustee assume no liability or responsibility for payment of such benefits, and each Participant, his or her spouse or Beneficiary, or other person who shall claim the right to any payment under the Plan shall be entitled to look only to the Trust Fund for such payment and shall not have any right, claim or demand therefor against the Committee, or any member thereof, the Employer, the Trustee, or any employee or director thereof.

11.11    Any and all rights or benefits accruing to any persons under the Plan shall be subject to the terms of the Trust Agreement or any other funding instrument that is part of the Plan and the Trust Fund.

11.12    The duties and responsibilities allocated to each person under the Plan and the Trust Agreement shall be the several and not joint responsibility of each, and no such person shall be liable for the act or omission of any other person.

11.13    The captions preceding the Sections hereof have been inserted solely as a matter of convenience and in no way define or limit the scope or intent of any provisions hereof.

11.14    The Plan and all rights thereunder shall be governed by and construed in accordance with the Code and the Treasury Regulations promulgated thereunder and the laws of the State.

Dated:  July__, 2003    _____

Michael J. Jaszcar,
Chairman

Plan Document

for the

# DEFERRED COMPENSATION PLAN FOR EMPLOYEES OF THE METROPOLITAN TRANSPORTATION AUTHORITY, ITS SUBSIDIARIES AND AFFILIATES

**As amended and restated January 1, 2003**

**Deferred Compensation Plan**
**for Employees of**
**The Metropolitan Transportation Authority, its Subsidiaries and Affiliates**
**Plan Document**

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| **PURPOSE** | 1 |
| **SECTION 1. DEFINITIONS** | 3 |
| "*Account*" | 3 |
| "*Administrative Service Agency*" | 3 |
| "*Alternate Payee*" | 3 |
| "*Amount Deferred*" | 3 |
| "*Beneficiary*" | 4 |
| "*Business Day*" | 4 |
| "*Code*" | 4 |
| "*Committee*" | 4 |
| "*Compensation*" | 4 |
| "*Distributee*" | 4 |
| "*Eligible Retirement Plan*" | 4 |
| "*Eligible Rollover Distribution*" | 5 |
| "*Employee*" | 5 |
| "*Employer*" | 6 |
| "*Enrollment Date*" | 6 |
| "*Financial Organization*" | 6 |
| "*Investment Fund*" | 6 |
| "*Local Employer*" | 6 |
| "*Normal Retirement Age*" | 6 |
| "*Participant*" | 7 |
| "*Participation Agreement*" | 7 |
| "*Plan*" | 8 |
| "*Plan Benefit*" | 8 |
| "*Plan Year*" | 8 |
| "*Qualified Domestic Relations Order*" | 8 |
| "*Regulations*" | 8 |
| "*Review Committee*" | 8 |
| "*Rollover Account*" | 8 |
| "*Rollover Contribution*" | 8 |
| "*Section 457 Transfer*" | 9 |
| "*Severance from Employment*" or "*Severs from Employment*" | 9 |
| "*State*" | 9 |

i

"*Surviving Spouse*" ...................................................................................9
"*Treasury Regulations*" ...........................................................................9
"*Trust Agreement*" ...................................................................................9
"*Trust Fund*" ...........................................................................................10
"*Trustee*" ..................................................................................................10
"*Unit*" ........................................................................................................10
"*USERRA*" ................................................................................................10
"*Valuation Date*" ....................................................................................10

**SECTION 2. PARTICIPATION**..................................................................**11**

**SECTION 3. AMOUNTS DEFERRED**.........................................................**12**

**SECTION 4. INVESTMENT OF AMOUNTS DEFERRED AND ROLLOVER
          CONTRIBUTIONS** ........................................................**16**

**SECTION 5. ACCOUNTS AND RECORDS OF THE PLAN**..................**21**

**SECTION 6. WITHDRAWALS FOR UNFORESEEABLE EMERGENCIES;
          WITHDRAWALS OF SMALL ACCOUNTS; LOANS** ......................**24**

**SECTION 7. DISTRIBUTIONS FROM THE PLAN AND OTHER ELIGIBLE
          RETIREMENT PLANS**........................................................**28**

**SECTION 8. DESIGNATION OF BENEFICIARIES**................................**35**

**SECTION 9. ADMINISTRATION** ................................................................**37**

**SECTION 10. AMENDMENT OR TERMINATION** ................................**42**

**SECTION 11. GENERAL LIMITATIONS AND PROVISIONS** ............**43**

11.11    Any and all rights or benefits accruing to any persons under the Plan shall be subject to the terms of the Trust Agreement or any other funding instrument that is part of the Plan and the Trust Fund.

11.12    The duties and responsibilities allocated to each person under the Plan and the Trust Agreement shall be the several and not joint responsibility of each, and no such person shall be liable for the act or omission of any other person.

11.13    The captions preceding the Sections hereof have been inserted solely as a matter of convenience and in no way define or limit the scope or intent of any provisions hereof.

11.14    The Plan and all rights thereunder shall be governed by and construed in accordance with the Code and the Treasury Regulations promulgated thereunder and the laws of the State.

Dated: ~~July ___,~~ 2003    8/27/03

Michael J. Jaszcar
Chairman



N 29—Notice of Claim against Dumb Transit Authority NYC ... JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

*In the Matter of the Claim of*

BURKE

*against*

SOLOMON ACOSTA & FAS CORP/GREATWEST & MTA/
NYC TRANSIT AUTHORITY ETC.

SERVICE ACCEPTANCE FOR NYCT ONLY

TO:

TRANSIT AUTHORITY

*PLEASE TAKE NOTICE that the undersigned claimant(s) hereby make(s) claim and demand against you as follows:*

1. The name and post-office address of each claimant and claimant's attorney is:

BRIAN T. BURKE PRO SE
145 EAST 23RD ST #4R
NEW YORK, NY 10010

2. The nature of the claim: THE UNLAWFUL CONVERSION OF PLAINTIFF'S 457 ACCOUNT & ATTEMPT TO CAUSE DEFAULT ON PLAINTIFF'S PRIMARY RESIDENCE I.E. FRAUD, TORTUOUS INTERFERENCE WITH CONTRACT, CONSPIRACY TO INDUCE BREACH OF CONTRACT, INTERFEER-ENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, NEGLIGENT MISREPRESENTATION (AS FIDUCIARY), NEGLIGENCE, CIVIL CONSPIRACY, ETC. AND MENTAL ANGUISH AND FEDERAL & STATE RICO ACTS.

3. The time when, the place where and the manner in which the claim arose:

PLAINTIFF WAS MADE KNOWN OF THESE CIVIL & CRIMINAL ACTS COMMITTED AGAINST HIS LAWFUL FINANCIAL INTERESTS OVER THE LAST WEEKS OF AUGUST, 2006 BY TELEPHONE CONVERSATIONS WITH FASCORP REPRESENTATIVE AND BY LETTER FROM SOLOMON ACOSTA (DEFENDANT & EMPLOYEE OF MTA, ACTING AS MTA EMPLOYEE).

4. The items of damage or injuries claimed are:*

UNLAWFUL SEIZURE & CONVERSION OF 457 ACCOUNT AND ATTEMPT TO CAUSE DEFAULT ON PRIMARY RESIDENCE/CONDOMINIUM AND LOSS OF DEPOSIT AND EQUITY. VALUE OF CONDOMINIUM PROPERTY APPROXIMATE $1,000,000.00 WITH EQUITY, INCLUDING DEPOSIT, OF APROXIMATELY $500,000.00 VALUE OF 457 ACCOUNT OF APROX. $60,000.00

MENTAL ANGUISH AND COSTS ACCOUNTING FOR REMAINDER OF CLAIM.



PERSONAL SERVICE

TOTAL AMOUNT CLAIMED*                                        ($1,000,000.00)

* Do not use dollar amounts outside of New York City.



In the Matter of the Claim of

**BRIAN BURKE**

against

SOLOMON ACOSTA & EASTORP/6/NEW/AMTAK

NY/TRANSIT AUTHORITY ETC.

## Notice of Claim

Attorney(s) for Claimant(s)
Office and Post Office Address

BRIAN BURKE
145 EAST 23RD ST #4K
NEW YORK NY 10010

---

ARTHUR GREEBLER
Notary Public, State of New York
NO. 01GR4713317
Qualified in Queens County
Commission Expires October 31, 2010

Sworn to before me, this 19 day of No 2006

**INDIVIDUAL VERIFICATION**

State of New York, County of

being duly sworn, deposes and says that deponent is the claimant in the within action; that he has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Office and Post Office Address, Telephone Number

BRIAN BURKE PRO SE
145 EAST 43RD ST # 4K
NY, NY 10010

Attorney(s) for Claimant(s)

Dated: 11/07/06

The undersigned claimant(s) therefore present this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant(s) intend(s) to commence an action on this claim.

---

Sworn to before me, this 19 day of

**CORPORATE VERIFICATION**

State of New York, County of                    ss.:

being duly sworn, deposes and says that deponent is the
of
corporate claimant named in the within action; that depo-
nent has read the foregoing Notice of Claim and knows the
contents thereof, and that the same is true to deponent's
own knowledge, except as to the matters therein stated to be
alleged upon information and belief, and as to those matters
deponent believes it to be true.
This verification is made by deponent because said
claimant is a                                        corporation, and deponent
an officer thereof, to wit its
The verification of deponent's belief as to all matters not stated
upon deponent's knowledge are as follows:

The name signed must be printed beneath

BRIAN BURKE

The name signed must be printed beneath